His Honor, CHARLES F. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
This is a suit for the settlement of an alleged partnership.
The plaintiff alleges that since the year 1893 a partnership has existed between him and his brother, the defendant, conducted under the name of said defendant, S. T. Hopkins for the manufacture of “Johnny Crook Candy;” that considerable property belongs to said partnership; *387 that without auy cause, on June 19th, 1907, the defendant denied to plaintiff the rights of a partner and refused him admission upon the premises occupied by said partnership; he prays for a dissolution of the partnership and for an accounting and partition of its assets.
The defendant pleaded a general denial.
There was judgment in favor of plaintiff dissolving the partnership and ordering an accounting of its affairs. Defendant has appealed.
The plaintiff testified that he had been engaged in business with his brother since 1884; that at that time they were in Natchez; they moved to Baton Rouge m 1888 when they started the candy business as partners; they borrowed money but his brother alone signed the note; their business was not prosperous, and they closed it in 1893; his brother came to New Orleans, again borrowed money, and established the business at the corner of Dauphine and Louisa; he joined him there a few months afterwards; at the request of his brother and to protect his credit he signed his “name to the effect that the business was clear and that he had no claim against it,” with the understanding that when they would be out of debt they would go ahead and do business as they had been doing; they worked the “Johnny Crook Candy” Manufactory,” and their business increased; but his brother began to neglect the business so he got him to give him the following acknowledgment, signed on a bill-head:
“S. T. Hopkins Manufacturing Confectioner, corner of Louisa and Dauphine Streets, Manufacturer of the celebrated Johnny Crook Candy.
“New Orleans, La., January 1st, 1897.
“This is to certify in consideration of faithful services, I hereby give to my brother, Walter W. *388 Hopkins, one-half interest in my business of Joknny Crook Manufacturer.”
(Signed), “S. T. Hopkins..
Witnesses: “Louis Bidder,
‘ ‘ George Auderer. ’ ’
Plaintiff was the candy and cake maker until the business grew too large for him and then they hired help to the extent of 13; when he needed money he drew it, he bought property and engaged in the race horse business; he never received any salary; he attended to the business in a general way; his brother attended to. the books and shipping goods and collecting; they kept a bank account in the Peoples’ Bank in the name- of defendant; he had an account in his own name in the same bank; the license for the business was in the name of defendant; the notes for borrowed money were also signed by him; plaintiff’s name never appeared on the stationary.
H. J. Hopkins, a brother of the plaintiff and of the defendant, testifies that he lives at Baton Rouge; he borrowed money to buy horses from both of his brothers; he paid the money back to plaintiff; the defendant told him that he had given plaintiff a paper saying that he was a partner; he is a member of the police at Baton Rouge.
P. Separin says that the defendant told him he was in business with his brother.
A. Chevalier testifies that he rented a property on St. Louis Street to the two brothers for a candy factory; they represented themselves as partners; he made the first rent receipt in the name of both; but afterwards he made it in the name cf S. T., as he gave the check.
The defendant, S. T. Hopkins, testifies that from Natchez he went to Baton Rouge in 1884; he remained there about two years and then came to New Orleans; he was in *389 the confectionery business and then in the Johnny Crook Candy Manufactory; he never had any partner; when he came to New Orleans he borrowed $1,350- from nis father-in-law, Bentz, and to secure the payment of it he give his note endorsed by his wife, his life insurance papers, and he sold him all.his fixtures and then rented them from him; his brother-in-law, Fred, was to share in the business; his brother, W. W., had no interest in it; he was in his -employ as candy and cake maker at $15 a week up to 1907; he is not sure in what capacity he was employed in Baton Bouge; he never wias plaintiff’s partner; in 1897 he owed a note of $300 to the Bank of Baton Bouge; it threatened suit, and, as he could not pay it, he drew up the document dated January 1st, 1897 and put it in the safe to be used in case of necessity; he afterwards paid the bank; he never gave the document to his brother; his brother took it out of the safe without his knowledge; his brother was his partner in race horses; the bank account was in his name and he drew all checks In his own name; he kept books, but his brother’s name appears nowhere on those books; he discharged his brother in June, 1907; he did not claim then to be his partner;' Chevalier’s testimony is false; so is Separin’s; he never told any one that his brother was his partner; he paid his brother every Saturday evening as he did his other employees; his brother was foreman in the shop and also sold candy arid made charges in the books; all the receipts are in his, defendant’s name; he never told his brother, H. J., that he was plaintiff’s partner; the plaintiff some times handled the cash, paid off the employees, and received money the same as any other confidential clerk and had access to the safe; when defendant was ■attending to the race horses, plaintiff would run the candy business; they were 'together when he rented the *390 place from Chevalier;.the rent receipts were never made in his brother’s name; it is not true that Bentz asked that the business be run in his name; the business was worth more than $1,300 in 1897; his brother owns property worth three or four thousand dollars; he gave his brother a lot of money while he was in his employ; but his brother could not draw what he wanted; his brother won $1,200 in the lottery.
Henry Bentz loaned money to S. T. Hopkins; had no transaction with W. W., never heard that they were partners.
Victor Miller is a candy maker at defendant’s place; has worked there 14 years; considered plaintiff as boss over him, as foreman, but not as proprietor; never knew any one else ¡as owner but S. T. Hopkins; but took orders from both.
Antoine Chevalier is a candy cutter; has worked for defendant for about four years; plaintiff was cutting candy and wrapping like the others; never knew him to be a partner; and never heard anyone say so.
William D’Aquin is in the sugar and molasses business; has been dealing with defendant for about 15 years, brrying bis sugar from him; he gave the orders and fixed the terms; he saw the plaintiff in the store all the time; dealt with him some times, sold him now and then a lot of sugar.
J. W. F. Meyer-is in the paper and stationery business; has sold the defendant goods for about twenty years; plaintiff was in the habit of borrowing money for account of his brother to pay off the hands; the 'business was run in defendant’s name.
The trial Judge came to the conclusion that a partnership existed between plaintiff and defendant. We cannot say that he has erred. Tf plaintiff was only an em *391 ployee and paid like all other employees on Saturday evening’, why were not some other employees produced who had seen him paid, in order to corroborate defendant and make his testimony certain? Plaintiff was a man of family. He owned a house worth between three and five thousand dollars. How could he acquire a house of that value with earnings limited to $15 a week? Defendant answers that he gave him a lot of money. As no one is presumed to give gratuitously we are inclined to believe that plaintiff was entitled to the money his brother gave him. . '
But the doubt, it seems to us, if there is any, is resolved by the document dated January 1st, 1897, by which defendant gave plaintiff one-half interest in his business. Objection was made to that document on the ground that it was null as a donation because it was not executed before a notary and two witnesses. We do not interpret the document as a donation within the meaning of Article Civil Code 1536 (1523). It was merely a declaration establishing the relations which would thereafter exist between the brothers in the business in which they were mutually engaged. When the interest of a partner in a firm is increased, or when an employee is promoted to the position of a partner, he is said to have been given an interest; but that does not mean a donation, which is required to be evidenced by a notarial act; it constitutes a fixing of the interest in the partnership concern.
The defendant contends, however, that the document was a simulation and meant only to protect him against a suit on a note of $300 which he owed the Baton Bouge Bank. The burden of proof was upon him to show that fact. Plaintiff denies it. Besides, his explanation is improbable. His business was worth $1,300 in 1897. The *392 simulated transfer of the whole of it might have acted as a scarecrow, hut the sale of only one-half would have left him exposed to seizure for the other half.
Opinion and decree, June 12th, 1916.
Judgment affirmed.